# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| SALLY A. STILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cv-00248-SLC |
| | ) | |
| INDIANA STATE POLICE and | ) | |
| CLINT HETRICK, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by Defendants Indiana State Police and Clint Hetrick ("Defendants"), who seek summary judgment on all of Plaintiff Sally A. Still's claims against them.[1] (DE 42). Defendants have filed a memorandum in support of their motion for summary judgment (DE 43) along with supporting exhibits (DE 44). Still has filed a response in opposition (DE 48), and Defendants filed a reply brief in support of their motion (DE 51). This matter is now ripe for adjudication. For the reasons explained herein, Defendants' motion for summary judgment will be GRANTED IN PART and DENIED IN PART.

### A. Legal Standard

On a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 17).

determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770 (citation omitted). A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citation omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### B. Facts and Background [2]

This matter arises out of a traffic stop which took place on the night of July 4, 2011, when Hetrick, an Indiana State Police Trooper (and an employee of the Indiana State Police), stopped Still's vehicle on Minnich Road in New Haven, Indiana. (DE 44-2 at 3; DE 44-3 at 2, 7).

On the day before the traffic stop, July 3, 2011, Still was taken to the emergency room by ambulance because she was having problems with her breathing. (DE 48-2 at 2). When she was released from the hospital that night, Still stayed at her mother's house because she could not make it up the steps to her second-floor apartment when she was having trouble breathing. (DE

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Still, the nonmoving party. *Payne*, 337 F.3d at 770.

48-2 at 2). Still had been receiving treatment for her asthma since she was diagnosed in 1993 or 1994. (DE 48-2 at 3). Still's asthma treatment included several medications, as well as two kinds of albuterol inhalers. (DE 48-2 at 4). She used a little albuterol inhaler as her daily/rescue inhaler, and she also had a bigger albuterol inhaler at home, the same type that the hospital uses, which is programmed into a computer. (DE 48-2 at 4). When Still has an asthma attack, her doctors want her to use her bigger inhaler until she gets her breathing evened out. (DE 48-2 at 4). When Still's mother had gone to Still's apartment to get her asthma medication, her mother forgot to get the bigger albuterol inhaler. (DE 48-2 at 4).

At around 8:00 or 8:30 p.m. on July 4, 2011, Still left her mother's house and began driving to her own apartment to get her bigger inhaler. (DE 48-2 at 2, 4). It was about a 15-minute drive from her mother's house to Still's apartment. (DE 48-2 at 2, 5). Still was driving on Minnich Road and was nearly to her apartment when Hetrick put his lights on behind her. (DE 48-2 at 6). When she saw Hetrick's lights behind her, Still immediately pulled over onto the shoulder of the road and put her car into park. (DE 48-2 at 6). Hetrick remained in his car for what "seemed like forever" to Still, but what she guessed was "more like maybe a couple of minutes at the most" before approaching Still's car. (DE 44-2 at 6; DE 48-2 at 6).

Still rolled her window down as soon as Hetrick came up to her car door, and she immediately said "I know why you pulled me over" and admitted that she had been speeding. (DE 44-2 at 8; DE 48-2 at 7). Hetrick asked Still how fast she was going, and she stated that she was going 10 miles over the speed limit. (DE 48-2 at 7). Hetrick informed her that she was actually going 15 miles over the speed limit. (DE 48-2 at 7). Still then gave Hetrick her license and registration when he requested them, and Hetrick returned back to his patrol car. (DE 44-2 at

3

9; DE 48-2 at 7).  During the several minutes that Hetrick was back at his patrol car, Still had

rolled her window back up.  (DE 44-2 at 11; DE 48-2 at 8).  Still had kept her car running to keep

the air conditioning going, but her asthma started getting worse, and she realized she needed her

medication, specifically her inhaler.  (DE 44-2 at 11-12; DE 48-2 at 8).

When Hetrick returned to her car, Still rolled down her window, told him that she lived in

the apartment complex that was visible from where they were stopped, and asked him to follow

her there because she needed her medication.  (DE 44-2 at 12; DE 48-2 at 8).  Still did not

specify what medicine she needed or why she needed it.  (DE 44-2 at 13; DE 48-2 at 8).  Hetrick

told her "no," that he would not follow her back to her apartment to get her medicine because he

was "in charge."  (DE 44-2 at 13; DE 48-2 at 8).  Hetrick then asked Still if she had any jewelry

on her, and she told him that she did not.  (DE 44-2 at 13; DE 48-2 at 8-9).  Hetrick made another

comment about him being the one in charge, which he said many times during the stop.  (DE 44-

2 at 14; DE 48-2 at 9).

When Hetrick asked her if she was okay, Still again asked him to follow her to her

apartment because she needed her medicine.  (DE 44-2 at 14; DE 48-2 at 9).  Still informed

Hetrick that if she did not get her medicine, it would be "a medical emergency."  (DE 44-2 at 16;

DE 48-2 at 9).  Still did not tell Hetrick what medicine she needed or why she needed it.  (DE 48-

2 at 9).  After she asked Hetrick the second time to follow her to get her medicine, Hetrick told

Still that she did not have any rights.  (DE 44-2 at 14; DE 48-2 at 9).  Then, while Hetrick was

returning to his car, Still heard him say, "'We have got a Burmese' or something like that," into

some kind of speaker near his shoulder.  (DE 48-2 at 9-10).

When Hetrick came back to Still's car, she again told him that she really needed her

4

medicine.  (DE 48-2 at 10).  Still knew that Hetrick had seen her driver's license, registration, and license plate, so she thought he would know she needed help.  (DE 48-2 at 10).  Still's license plate was a handicapped plate, her registration said "handicapped" on it, and her driver's license had a "medical alert" on the front and specified that she had asthma and chronic obstructive pulmonary disease ("COPD") on the back of the license.  (DE 48-2 at 10).  Still's breathing continued to get worse, and she was afraid that she would have to go back to the hospital if she did not get her medicine.  (DE 44-2 at 17; DE 48-2 at 11).

Hetrick told her to keep her window down all of the time, as Still had rolled her window up when Hetrick had gone back to his car for several minutes.  (DE 44-2 at 18; DE 48-2 at 11).  Still told Hetrick that if she kept her window down, she would die because of the heat.  (DE 44-2 at 18; DE 48-2 at 11).  Hetrick reminded Still again that he was in charge, and then "somehow the door got opened, and he got his knee in between the door and where you close it . . . ."  (DE 44-2 at 19; DE 48-2 at 11).  During the time that Hetrick had his leg inside her door, which she guesses was for "three minutes maybe," Still felt trapped and unable to move.  (DE 44-2 at 34; DE 48-2 at 34).  Hetrick then physically checked her seat belt, to make sure that Still had her seat belt buckled.  (DE 44-2 at 19; DE 48-2 at 11).  Hetrick grabbed the seat belt where it went around her waist and where it crossed her chest, and he pulled on it a couple of times.  (DE 44-2 at 19-21; DE 48-2 at 11-12).  Hetrick touched Still between her breasts, on her leg, and around her hip area, but she did not believe the manner he touched her was sexual; she nevertheless told him that he could not touch her without permission, unless he was going to handcuff her.  (DE 44-2 at 20-22; DE 48-2 at 11-12).  Hetrick responded that "[w]e can do that."  (DE 44-2 at 20; DE 48-2 at 11).  Before Hetrick pulled on Still's seatbelt himself to check it, he told Still to pull

on the belt and she did.  (DE 44-2 at 22-23; DE 48-2 at 12).

After that, Hetrick went back to his car and Still heard him say "I need backup," or something to that effect.  (DE 48-2 at 12).  Still had put her window up again when Hetrick had gone back to his patrol car.  (DE 48-2 at 13).  Hetrick returned a few minutes later with a "rod," which he "struck [] on the ground, and then he waved it."  (DE 48-2 at 12-13).  Still's window was up at that time, and Hetrick waved the rod "like swinging a baseball bat," and told her that if she did not keep her window down, he was going to break the window.  (DE 48-2 at 12).  Hetrick swung the rod close enough that he missed her window but still scared her.  (DE 48-2 at 13).  Still rolled down her window, and Hetrick then went to her back door and said that he was going to break that window and "tell them the window was broken before [he] stopped [her]."  (DE 48-2 at 12).  Hetrick then said to Still, "oh, you will have glass in your hair and it will be put in there so they will know what just happened."  (DE 48-2 at 12).  So Hetrick put the rod down.  (DE 48-2 at 12).

Still told Hetrick that she was "getting more sick" and needed an ambulance.  (DE 48-2 at 13).  Hetrick just said "no."  (DE 48-2 at 13).  About that time, Still noticed her brother's car pull up in front of her car, and she saw her brother and his wife.  (DE 48-2 at 13).  After her brother arrived, Hetrick kept telling Still, "Pull the keys.  You are going to jail.  Pull the keys."  (DE 44-2 at 31; DE 48-2 at 14).  And Still replied, "That is going to kill me in this heat."  (DE 44-2 at 30; DE 48-2 at 14).  By the time her brother arrived, Still was "basically yelling" to the officer that she needed an ambulance.  (DE 44-2 at 29; DE 48-2 at 14).  Still thinks her brother knew she was "kind of hysterical at that time," and "he knew that [her] medical issues get worse."  (DE 44-2 at 29; DE 48-2 at 14).  Still's brother told her to calm down several times.  (DE 44-2 at 29, 32; DE

48-2 at 14).  Still told her brother that if he had gone through what she just went through, she did not know if he would be calm either.  (DE 44-2 at 29; DE 48-2 at 14).

After Hetrick talked to her brother, Hetrick asked Still, "Sally, do you need an ambulance?"  (DE 44-2 at 28).  Still said, "Yes," and then Hetrick called for an ambulance.  (DE 44-2 at 28).  Still felt like Hetrick started treating her like she was a victim after her brother arrived, because he called for the ambulance after he had refused to call the ambulance before.  (DE 44-2 at 30).  Then the ambulance arrived and the ambulance personnel provided medical care to Still.  (DE 44-2 at 32; DE 48-2 at 15).  One of the ambulance personnel got in her car to check her vitals, and he said, "Where [are] the keys?  I'm even suffocating in here."  (DE 48-2 at 15).  Still told him that he should talk to the officer, and Hetrick immediately gave the ambulance personnel the keys to her car.  (DE 48-2 at 15).  Still believes that the ambulance staff informed Hetrick as to what her medical conditions were.  (DE 44-2 at 33).  Still's car would have been impounded, but Hetrick allowed her brother to take the car.  (DE 44-2 at 35).  Hetrick issued Still's speeding ticket and gave it to her brother, who later gave it to Still.  (DE 44-2 at 35).

### C.  Discussion

Defendants argue that the Court should grant summary judgment on all of Still's claims against them, both federal and state law claims.  Specifically, Defendants request summary judgment be granted on Still's federal law claims under the Fourth, Eighth, and Fourteenth Amendments and § 1983 for unreasonable detention, unreasonable seizure, false imprisonment, false arrest, theft, trespass, deprivation of medical needs and care, and inhumane conditions of confinement without excuse or justification.  (DE 43 at 7).  Defendants further contend that they are entitled to summary judgment on Still's Indiana state law claims for false imprisonment, false

arrest, theft, trespass, assault, negligent care of a detained individual in the care and custody of a police officer, failure to provide needed medical care in a timely fashion, and negligent and intentional infliction of emotional distress. (DE 43 at 16). The Court will address whether Defendants are entitled to summary judgment first as to Still's federal claims and then as to Still's state law claims.

## 1. Federal Claims

In Count I of her complaint, Still alleges federal claims against Hetrick only, specifically claims for unreasonable detention, unreasonable seizure, false imprisonment, false arrest, theft, trespass, deprivation of medical needs and care, and inhumane conditions of confinement without excuse or justification. (DE 1 ¶¶ 38-41). Defendants argue that they are entitled to summary judgment on all of these claims because (1) the facts taken in the light most favorable to Still establish that there was no unreasonable detention, false imprisonment, false arrest, unreasonable seizure, theft, or trespass; (2) the Eighth Amendment does not apply to Still because she was not incarcerated, and therefore her claims for deprivation of medical care and inhumane conditions of confinement fail as a matter of law; and (3) Hetrick is entitled to qualified immunity on Still's federal claims. (DE 43 at 7-16).

Still, in her response, disputes Defendants' arguments with regard to all claims other than theft and trespass, and Still also states that she is "rais[ing] the issue" of her claims against Hetrick for excessive force under the Fourth Amendment and deliberate indifference to her serious medical needs under the Fourteenth Amendment, in order to "preserve" them, since she contends that Defendants ignored these claims in their motion and memorandum. (DE 48 at 8). Defendants, in their reply brief, still contend that they are entitled to summary judgment on all of

Still's federal claims against Hetrick; Defendants also argue that Hetrick should not have to defend the claims of excessive force and deliberate indifference to Still's serious medical needs, as he had no notice of these claims, which Defendants contend Still raised for the first time in her response brief. (DE 51 at 2).

Before beginning its substantive analysis of the parties' arguments, the Court will address a few preliminary matters. First, because Still has conceded that Defendants are entitled to summary judgment regarding her federal claims against Hetrick for theft and trespass, Defendants' motion for summary judgment will be granted as to Still's federal claims for theft and trespass. Secondly, the Court agrees with Defendants that Still's complaint did not allege a claim for excessive force, but rather raises this claim for the first time in her response to Defendants' motion for summary judgment. It is well settled in this Circuit that "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)); *see also Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (affirming the district court's refusal to consider a claim raised for the first time in the plaintiff's response to defendant's summary judgment motion). Thus, the Court will not further address Still's arguments regarding a claim of excessive force.

A third preliminary matter is Defendants' contention that Still raised a claim for deliberate indifference to her serious medical needs for the first time in her response brief. The Court finds that this claim is essentially the same as her claim for deprivation of medical care. *See Burns v. Head Jailor of LaSalle Cty. Jail*, 567 F. Supp. 618, 620 (N.D. Ill. 1984) ("To state a claim for the deprivation of medical care, a prisoner must allege 'deliberate indifference to

serious medical needs.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))). Furthermore, Still does allege in her complaint that Hetrick acted "knowingly and with deliberate indifference" to Still's rights by refusing to permit Still to obtain her medicine or medical care and by failing to timely provide access to medical care and treatment. (DE 1 ¶¶ 40-41). Because her complaint does allege deliberate indifference—albeit in a separate paragraph from the other federal claims—and because this claim is essentially the same as Still's claim for deprivation of medical needs, Defendants had the fair notice required by the federal pleading rules with respect to this claim, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus the Court will consider Still's claim for deliberate indifference to her serious medical needs, together with Still's claim for deprivation of medical care, in determining whether Defendants are entitled to summary judgment.

Having resolved these preliminary matters, the Court will now turn to the parties' substantive arguments regarding whether Defendants should be granted summary judgment on Still's federal claims.

> ### a. Still's Fourth Amendment Claims: Unreasonable Detention, False Imprisonment, False Arrest, and Unreasonable Seizure

Still alleges § 1983 claims against Hetrick for unreasonable detention, false imprisonment, false arrest, and unreasonable seizure in violation of her Fourth Amendment rights. (DE 1 ¶¶ 39, 41). To prove a claim under § 1983, Still "must show two elements: (1) the party against whom the claim is brought qualifies as a 'person acting under the color of state law'; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States." *Tom Beu Xiong v. Fischer*, 787 F.3d

389, 397 (7th Cir. 2015) (citations omitted).  There appears to be no dispute that Hetrick was acting under color of state law during the traffic stop.

Defendants argue instead that there was no violation of Still's rights.  Defendants argue that Hetrick had probable cause to stop Still's vehicle, which he witnessed exceeding the speed limit; that he detained her only 10-11 minutes while attempting to gather the information necessary to issue Still a speeding ticket, which Defendants contend was a reasonable amount of time given the circumstances; that Still left the scene of the traffic stop by ambulance before Hetrick was able to complete the purpose of the traffic stop by issuing her a speeding ticket; that Still was never imprisoned during the traffic stop, only permissibly detained for a reasonable period of time while Hetrick conducted the traffic stop; that Still was never arrested during the traffic stop, and the stop did not extend beyond the amount of time reasonably necessary to complete the purpose of the stop, so there was no false arrest; and Hetrick reasonably seized Still and her vehicle for only the amount of time necessary to complete the traffic stop.

Still does not challenge that Hetrick had probable cause to stop her vehicle, as she readily admits she was speeding.  She does contend that Hetrick detained her for an unreasonably long time, given her need for medical attention.  Still also argues that there is a material fact in genuine dispute as to the length of the traffic stop and as to Hetrick's actions during the stop. Still argues that Defendants' memorandum gives the benefit of the doubt to Hetrick's version of events rather than Still's version of events, which is improper for summary judgment.   Still argues that her deposition testimony provides evidence that Hetrick prolonged the stop during Still's asthma and COPD attack, by telling her that she had no rights, by asking about her jewelry, by forcing himself into the car and feeling around for her seatbelt, and by waving his

11

police baton and threatening to break her window while telling her that she was going to jail. Still contends that her deposition testimony presents evidence that all of this occurred after she gave Hetrick an immediate admission that she was speeding, and after she immediately gave him her identification and necessary paperwork to process and issue a ticket. Thus Plaintiff contends that her evidence is supportive of a finding that Hetrick "willfully and unnecessarily prolonged the stop" "beyond 'the time reasonably required' to write and deliver a speeding ticket." (DE 48 at 10). Still makes the same arguments in support of her false imprisonment claim—that Hetrick unreasonably extended the duration of the stop after having received all the information he needed to issue her a speeding ticket. In support of her false arrest claim, Still argues that Hetrick falsely arrested her by telling her that she was going to jail and that she had no rights, and she contends that the stop was converted into an arrest because it extended beyond the time reasonably necessary to complete the stop. Finally, with respect to her unreasonable seizure claim, Still states that her car was seized for the same amount of time that her person was seized by Hetrick.

Defendants, in their reply, argue that Still is attempting to create an issue of fact regarding the time of the initial stop, when no such issue of fact exists. Defendants reiterate their argument that the duration of the stop was reasonable, given the circumstances, which included Still having an asthma attack and becoming hysterical during the stop. Defendants contend that Hetrick detained Still only long enough to accomplish the purpose of the stop, to give Still a speeding ticket, which he was not even able to do before Still left the scene in the ambulance Hetrick called for her. Defendants argue that it was reasonable for Hetrick to question Still beyond just the information needed for the citation, as she had told him she needed her medication and could

not be in the heat, so it was reasonable for Hetrick to talk to her about her needs. Additionally, Defendants argue that Still cited an incorrect legal standard for her false imprisonment claim, and they argue that under the proper standard, there was no false imprisonment of Still by Hetrick because there was no unlawful restraint of her freedom and there was no arrest without probable cause. Regarding Still's false arrest claim, Defendants argue that while a routine traffic stop can be converted into an arrest if the duration of the stop is unreasonably extended, this stop was not routine and Hetrick extended the stop as was reasonably necessary to investigate the situation and issue the citation. With regard to Still's unreasonable seizure claim, Defendants argue that Still's testimony shows that she, not Hetrick, pulled the keys out of her ignition, albeit at Hetrick's instruction, so there is no evidence that Hetrick took control of Still's vehicle. Defendants argue that Hetrick properly detained and seized Still and her vehicle during the traffic stop.

### i. Unreasonable Detention

The Court will turn first to Still's unreasonable detention claim. "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop." *Id.* (citations omitted). "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Id.* (alteration in original) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). An officer's "[a]uthority for the seizure thus ends when the tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

"Beyond determining whether to issue a traffic ticket, an officer's mission includes

'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 1615 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* (citations omitted). "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* (citations omitted). Thus, "[a] seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 1612 (quoting *Caballes*, 543 U.S. at 407).

Still's federal claim for unreasonable detention therefore comes down to whether Hetrick unreasonably detained Still by prolonging the traffic stop beyond the time reasonably required for him to complete the purpose of the traffic stop. The purpose of the traffic stop here was to issue Still a ticket for exceeding the speed limit. The facts of this case, with all inferences being made in favor of Still as the non-moving party, could support a jury finding that Hetrick unreasonably detained Still by asking her if she had any jewelry (DE 44-2 at 13; DE 48-2 at 8-9), wedging his knee into her car door and then physically touching her to check her seatbelt (DE 44-2 at 19-21, 34; DE 48-2 at 11-12, 34), swinging his police baton in an aggressive manner and threatening to break the rear window of the car even after Still rolled the driver's window down (DE 48-2 at 12), and by insisting that her keys be removed from the ignition and taking her keys (DE 44-2 at 31; DE 48-2 at 14-15). A jury could find that these actions taken by Hetrick were not ordinary inquiries related to the purpose of the traffic stop, which was to issue Still a speeding ticket. A jury could find Hetrick's actions to be an unreasonable and unnecessary extension of the traffic

14

stop, particularly as Still immediately gave Hetrick both her driving documents and an admission that she was speeding. Thus, Still's unreasonable detention claim is supported by the facts when taken in the light most favorable to her, and accordingly summary judgment is not appropriate.

### ii. False Imprisonment

"A § 1983 false imprisonment claim seeks damages for injury caused by the plaintiff's detention without probable cause." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010). Here, it is uncontested that Hetrick had probable cause to initiate the traffic stop of Still's vehicle when Hetrick saw her speeding. The question remaining for Still's false imprisonment claim under § 1983 is therefore essentially the same as that for her unreasonable detention claim—whether Hetrick unreasonably extended the duration of the traffic stop beyond the time necessary to complete the purpose of the stop. Thus, for the same reasons discussed above as to Still's unreasonable detention claim, summary judgment will also not be granted to Defendants on Still's false imprisonment claim.

### iii. False Arrest

In order "[t]o prevail on a claim of false arrest, the plaintiff must show there was no probable cause for his arrest." *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (citing *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007)). Where "probable cause to arrest is found to exist, it 'is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest.'" *Id.* (quoting *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006)). "Where a police officer 'has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.'" *Ray v. City of Chi.*, 629 F.3d 660, 663 (7th Cir. 2011) (quoting *Atwater v.*

*City of Lago Vista*, 532 U.S. 318, 354 (2001)). "This is true even if the minor criminal offense is a traffic offense." *Id.* (citing *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002)). Thus, "[s]o long as a police officer has probable cause to believe that a person has committed a crime, then it is not constitutionally relevant whether 'the person was arrested on . . . charges for which there was no probable cause.'" *Id.* (alteration in original) (quoting *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007)).

Here, Still was never actually arrested by Hetrick, but the parties are in agreement that "[a] traffic stop can be converted into a full-blown arrest if it extends beyond the time reasonably necessary to complete the purpose for which the stop was made." (DE 43 at 10; DE 48 at 13 (quoting *Huff v. Reichert*, 744 F.3d 999, 1005-06 (7th Cir. 2014))). While Defendants argue that Still was never under arrest at any time during the traffic stop, *Huff* makes it clear that "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Huff*, 744 F.3d at 1005 (quoting *Florida v. Bostick*, 501 U.S. 429, 436-37 (1991)). Here, Hetrick refused to let Still leave to get her medicine, and he refused even to accompany her to get her medicine. No reasonable person in Still's shoes would have felt free to terminate the encounter with Hetrick. Additionally, Defendants argue that, unlike the facts in *Huff*, the stop here did not continue after the issuance of a citation, which was the purpose of the traffic stop. Because Hetrick did not issue Still's speeding ticket until after she had left the scene of the traffic stop in the ambulance, when he gave it to her brother, Defendants contend that the purpose of the traffic stop was not completed until after Still had already left, so she was not detained for any longer than necessary to complete the purposes of the stop. However, because the Court found *supra* that a reasonable

16

jury could find that Hetrick unreasonably extended the duration of the traffic stop beyond the time necessary to complete the purpose of the stop, summary judgment will also not be granted as to Still's claim for false arrest.

### iv. Unreasonable Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "A seizure that is justified only by the need to issue a traffic ticket 'can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.'" *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Still explains in her response brief that her unreasonable seizure claim is intended to cover the seizure of her vehicle by Hetrick, because she states that Hetrick pulled the keys out of the ignition, threatened to break the windows, and forced his way into the passenger compartment, all after he had all the information he needed to issue a citation to Still, who had admitted she was speeding. (DE 48 at 15). In response, Defendants argue that Still's deposition testimony shows that Hetrick instructed her to remove the keys from the ignition, not that he removed them himself, and thus Defendants contend there is no evidence that Hetrick took control over her vehicle. (DE 51 at 8).

Still's deposition testimony, in fact, shows that Hetrick told Still several times to "pull the keys," but does not show that Still was the one to remove the keys from the ignition. (DE 44-2 at 31; DE 48-2 at 14). Still states that she does "not know if he pulled the keys or [she] pulled the keys, but . . . one way or another, the keys were forced to be out." (DE 48-2 at 14). Regardless of who physically removed the keys from the ignition, Still's deposition testimony establishes

that Hetrick had possession of the keys when the ambulance arrived, as Hetrick had to give them the keys so that they could turn the air conditioning back on in Still's car. (DE 48-2 at 15). Thus, contrary to Defendants' arguments, there is evidence that Hetrick seized Still's vehicle by taking possession of the keys to her car. Additionally, while Defendants argue that Hetrick's detention of Still and her vehicle during the traffic stop was reasonable, the issue of whether the stop duration was unreasonably extended seems relevant to this claim, too. For these reasons, summary judgment will not be granted to Defendants on Still's unreasonable seizure claim.[3]

    *b. Still's Claims Under the Eighth and Fourteenth Amendments: Claims for Deliberate Indifference, Deprivation of Medical Needs, and Inhumane Conditions of Confinement*

Still alleges that Hetrick subjected her to deliberate indifference, deprivation of her medical needs and care, as well as inhumane conditions of confinement without excuse or justification. (DE 1 ¶ 39). In their memorandum in support of their motion for summary judgment, Defendants argue that they are entitled to summary judgment on these claims against Hetrick because these claims arise under the Eighth Amendment, which only imposes a duty on the state to provide adequate medical care to prisoners, not to people who are pulled over for speeding violations. (DE 43 at 12-13). Defendants thus argue that because Still was not a prisoner, and because she did receive timely medical care, her claims for deprivation of medical

---

[3] The Court notes that Still's "claims" for unreasonable detention, false imprisonment, false arrest, and unreasonable seizure appear to be multiple legal theories in support of a single claim for relief, as they overlap in large part; these "claims" seek to recover for the same injury—that is, any unreasonable extension of the duration of the traffic stop. While Still cannot recover separately for multiple legal theories that constitute a single claim for relief, *see Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 860 F.2d 1441, 1445 (7th Cir. 1988), summary judgment is not proper merely because Still's theories overlap, *see Adams v. Jackson*, 218 F. Supp. 2d 1006, 1013 (N.D. Ind. 2002) ("[C]alling a redundant legal theory a 'claim' and dismissing it accomplishes nothing, other than, perhaps, simplification of the pleadings.").

needs and inhumane conditions of confinement fail.

In her response, Still contends that Defendants have misinterpreted the legal basis for her claim that Hetrick was deliberately indifferent to Still's serious medical needs during the stop. (DE 48 at 15). Still argues that the Fourteenth Amendment's due process guarantee provides the basis for the obligation to provide care for pretrial detainees. (DE 48 at 15 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979))). Still contends that she was a pretrial detainee because Hetrick repeatedly told her that she was going to jail. (DE 48 at 16). Still argues that she meets both the objective and subjective components for her claim of deliberate indifference, as her version of events demonstrates that Hetrick knew or should have known of her serious medical conditions—thus satisfying the objective element—and further demonstrates that Hetrick deliberately ignored her serious medical condition despite Still asking him for an ambulance and telling him that she would die—thus satisfying the subjective element. (DE 48 at 16-17).

In Defendants' reply, they contend that Still, in her response, appears to argue that her claim is made under the Fourteenth Amendment rather than the Eighth Amendment, but nevertheless still argues that Eighth Amendment protections apply to her as a pretrial detainee. Defendants also contend that they are relying on Still's testimony, not Hetrick's, to support their motion for summary judgment, specifically that Still never told Hetrick what her medicine was for or why she needed it. Additionally, Defendants contend that Still is merely assuming that Hetrick was aware of her medical conditions because she had a handicapped license plate and a medical alert on her driver's license. Defendants state that Still has provided no case law to support her claim that since she was being detained for a speeding ticket, she should be considered a pretrial detainee.

The first issue to be addressed here, for purposes of summary judgment, is whether Still was a "pretrial detainee" during the traffic stop. Still, as pointed out by Defendants in their reply brief, fails to provide citation to any authority in support of her position that she was a pretrial detainee during the traffic stop. While Still cites generally to *Bell v. Wolfish* for the proposition that "[t]he obligation to provide care for pre-trial detainees arises from the due process guarantees of the Fourteenth Amendment," this case does not discuss the rights of an individual who has been detained during a traffic stop. (DE 48 at 15 (citing 441 U.S. 520 (1979)). Instead, *Bell* discusses the rights of pretrial detainees who are being held in jail pending trial, specifically whether double-bunking, body cavity searches, restrictions on receiving packages, and room searches violate the constitutional rights of these jailed pretrial detainees; the Supreme Court found that these jail practices did not violate pretrial detainees' constitutional rights. 441 U.S. at 520-522.

"A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point. We will not do his research for him." *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) (quoting *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990)). Still has failed to provide any citation to authority in support of her contention that she should be considered a pretrial detainee, and thus she has forfeited on this issue. *See id.* (finding that a litigant who fails to present legal argument and supporting authority forfeits the point, even where the litigant is pro se). As such, Defendants will be granted summary judgment as to Still's claims for deprivation of medical needs and for inhumane conditions of confinement.

Even if the Court were to research this issue, despite having no obligation to do a

litigant's research for him, *see id.*, the Court would not find that an individual subject to a traffic stop is a pretrial detainee. Based upon a limited review of authority on the issue, the Court has found applicable the Supreme Court's finding in *Graham v. O'Connor*—that where a "claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." 490 U.S. 386, 394 (1989). While *Graham* involved an excessive force claim, the Court finds this reasoning to nevertheless be instructive as to Still's claims here. Still was a "free citizen" at the time of the traffic stop, and Hetrick's investigatory stop or even constructive arrest of Still would be governed by the protections of the Fourth Amendment. *See id.* This case involves the seizure of Still's person and her vehicle by Hetrick, and does not involve the rights of a pretrial detainee.

### c. Qualified Immunity

Defendants argue that Hetrick is entitled to qualified immunity on all of Still's federal claims against him. (DE 43 at 13-16). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Huff v. Reichert*, 744 F.3d 999, 1003-04 (7th Cir. 2014) (citations and internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The doctrine allows 'ample room for mistaken judgments

by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

There are "two key inquiries for qualified immunity assertions:  (1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id.* (citing *Pearson*, 555 U.S. at 232; *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Courts "may decide these questions in whatever order is best suited to the case at hand." *Id.* (citing *Pearson*, 555 U.S. at 236).

Because "the purpose of qualified immunity is to protect officers from guessing about constitutional developments at their peril, the plaintiffs have the burden of showing that the constitutional right was clearly established." *Id.* (citing *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008)).  A plaintiff can show that the constitutional right is clearly established "by showing that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Id.* (quoting *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001)).  If the issue of qualified immunity "cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Id.* (citing *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)).

As discussed above in subpart *a*, a reasonable jury could find that Hetrick violated Still's Fourth Amendment rights by subjecting her to unreasonable detention, false imprisonment, false

arrest, and/or unreasonable seizure by unreasonably extending the duration of the traffic stop.[4]

Thus, the first inquiry for a qualified immunity analysis is answered in the affirmative—the facts,

taken in the light most favorable to Still, could support a finding by a reasonable jury that Hetrick

violated a constitutional right.

As to the second inquiry for a qualified immunity analysis, Still's constitutional right to

be free from any unreasonable extension of the duration of the traffic stop was clearly established

at the time of the traffic stop on July 4, 2011.   On January 24, 2005, the Supreme Court in

*Illinois v. Caballes* stated that "[a] seizure that is justified solely by the interest in issuing a

warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably

required to complete that mission."  543 U.S. 405, 406 (2005).  The Seventh Circuit, on

September 7, 2005, cited *Caballes* for this rule, but also noted that "[a] traffic stop does not

become unreasonable merely because the officer asks questions unrelated to the initial purpose

for the stop, provided that those questions do not unreasonably extend the amount of time that

the subject is delayed."  *United States v. Martin*, 422 F.3d 597, 601-02 (7th Cir. 2005).  Thus,

Still's right to be free from an unreasonably prolonged traffic stop was clearly established at the

time she was stopped by Hetrick.

At this stage, the Court must accept Still's account of the situation, and her deposition

testimony presents evidence that Hetrick unreasonably prolonged the traffic stop by asking her if

she had any jewelry (DE 44-2 at 13; DE 48-2 at 8-9), wedging his knee into her car door and then

physically touching her to check her seatbelt (DE 44-2 at 19-21, 34; DE 48-2 at 11-12, 34),

---

[4] Defendants have been granted summary judgment on Still's other federal claims, and
the Court therefore need not address them for purposes of qualified immunity.

swinging his police baton in an aggressive manner and threatening to break the rear window of the car even after Still rolled the driver's window down (DE 48-2 at 12), and by insisting that her keys be removed from the ignition and taking her keys (DE 44-2 at 31; DE 48-2 at 14-15). No reasonable officer would believe such actions to be permissible under the Fourth Amendment. Hetrick thus is not entitled to the form of qualified immunity that would protect him from Still's claims for unreasonable detention, false imprisonment, false arrest, and unreasonable seizure.

### 2. State Law Claims

In Count II of her complaint, Still alleges claims against both Hetrick and the Indiana State Police as Hetrick's employer under the doctrine of *respondeat superior*, specifically claims for trespass, theft, false imprisonment, false arrest, assault, negligent care of a detained individual in the care and custody of a police officer, intentional and negligent infliction of emotional distress, and failure to provide needed medical care in a timely fashion. (DE 1 ¶¶ 42-47). Defendants argue that they are entitled to summary judgment on Still's state law claims because (1) Hetrick is entitled to immunity under the Indiana Tort Claims Act ("ITCA"); (2) there was no false imprisonment or false arrest of Still; (3) there was no theft or trespass; (4) Still was not assaulted during the stop; (5) Still was not in the custody of the police, and proper care was provided to her, so her claims for negligent care of a detained individual and failure to provide needed medical care fail; and (6) there was no negligent or intentional infliction of emotional distress. (DE 43 at 16-24). Because Still concedes in her response brief that her state claims for theft and trespass fail (DE 48 at 15), Defendants will be granted summary judgment on those claims. The Court will address each of the remaining arguments in turn.

*a. Hetrick's Immunity Under ITCA*

Defendants argue that Hetrick is entitled to immunity on Still's state law claims against him under ITCA, because they contend that Still agrees Hetrick was acting in his official capacity during the traffic stop. (DE 43 at 16-17). Defendants thus argue that Still's state law claims are against the Indiana State Police, not Hetrick, and Hetrick is entitled under ITCA to summary judgment on all of Still's state law claims. (DE 43 at 17).

In her response, Still offers only three sentences as her opposition to Hetrick being immune under ITCA from Still's claims. (DE 48 at 18). Still argues that ITCA expressly excludes claims of false arrest and false imprisonment, and she further argues that her claims against Hetrick for assault and the intentional and negligent infliction of emotional distress are actions outside the scope of his employment, and therefore are not covered by ITCA. Still argues that the basis of her claims is that Hetrick exceeded the scope of force, detention, and seizure reasonably necessary to issue a speeding ticket.

In Defendants' reply, they state that Still named Hetrick in his official capacity for her state law claims in her complaint, but then Still asserted in her response that he was acting outside the course and scope of his employment. Defendants argue that Hetrick is entitled to summary judgment under ITCA on any of Still's state law claims that she did not argue against in her response.

Under ITCA, "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . [t]he adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations) . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-

3-3(8).  This Court has previously recognized the Indiana Supreme Court's acknowledgment that additional exceptions to ITCA exist, "[f]or example, immunity does not apply to claims of assault, battery, and excessive force." *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1032 (N.D. Ind. 2014) (citations omitted).  "But 'add on' claims such as negligence and intentional infliction of emotional distress do not survive simply because they are a product of improper conduct." *Id.* (citations omitted).  Thus, Hetrick is not entitled to immunity under ITCA for Still's false arrest, false imprisonment, and assault claims, but Hetrick is entitled to immunity on Still's claims against him for (1) the negligent care of a detained individual in the care and custody of a police officer; (2) the failure to provide needed medical care in a timely fashion; and (3) the intentional and negligent infliction of emotional distress.  Defendants will therefore be granted summary judgment on Still's claims against Hetrick for the negligent care of a detained individual, the failure to provide needed medical care, and the intentional and negligent infliction of emotional distress.

### *b. False Imprisonment and False Arrest Claims*

Still alleges claims of false imprisonment and false arrest under Indiana state law against Defendants.  (DE 1 ¶ 45).  Because Hetrick is not entitled to immunity under ITCA on Still's false imprisonment and false arrest claims against him, the Court must address Still's false imprisonment and false arrest claims against both Hetrick and the Indiana State Police.

As noted by Still, "Indiana Courts have used the terms 'false arrest' and 'false imprisonment' interchangeably when a plaintiff's claim stems from detention by authorities without probable cause." *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) (citations omitted).  Indeed, the Indiana Supreme Court has agreed that it is not necessary to

make a separate analysis for false arrest and false imprisonment where the claim for false imprisonment stems from the alleged false arrest. *Row v. Holt*, 864 N.E.2d 1011, 1016 n.4 (Ind. 2007). Because Still addresses these claims together, so will the Court.

Indiana law defines false imprisonment "as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Bentz*, 577 F.3d at 779 (quoting *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003)); *see also Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002) (citations omitted). Under Indiana law, "[a] defendant may be liable for false arrest when he or she arrests the plaintiff in the absence of probable cause to do so." *Miller*, 777 N.E.2d at 1104 (citations omitted). "Indiana law defines an 'arrest' as 'the taking of a person into custody, that he may be held to answer for a crime.'" *Elliot v. Sheriff of Rush Cty.*, 686 F. Supp. 2d 840, 867 (S.D. Ind. 2010) (quoting Ind. Code. § 35-33-1-5). As noted by Defendants, "[a]n investigatory stop does not constitute an arrest under the Indiana definition of arrest." *Id.* (citing *James v. State*, 622 N.E.2d 1303, 1307 (Ind. Ct. App. 1993)).

In her response Still fails to address the case law cited by Defendant that an investigatory stop is not an arrest under Indiana law. She argues that she suffered a deprivation of her liberty when Hetrick told her he could handcuff her, told her that she was going to jail, and told her that she did not have any rights. While she argues that Hetrick did not have any reasonable suspicion of wrongdoing to justify his call for backup and his requirement that she stay in her car with her window rolled down, Still has failed to provide any authority in support of her contention that these actions constituted a false arrest or false imprisonment. Given the case law that an investigatory stop, or traffic stop, does not constitute an arrest in Indiana, the Court finds in

Defendants' favor as to Still's claims for false arrest and false imprisonment under Indiana state law. *See Elliot*, 686 F. Supp. 2d at 867 (citing *James*, 622 N.E.2d at 1307). Thus, Defendants will be granted summary judgment as to Still's state law claims against them for false imprisonment and false arrest.

### c. Assault Claim

Still alleges a claim of assault under Indiana state law against Defendants. (DE 1 ¶ 45). Because Hetrick is not entitled to immunity under ITCA on Still's claim against him for assault, the Court must address Still's assault claim against both Hetrick and the Indiana State Police.

The Indiana Model Civil Jury Instructions define assault as occurring when:

> (1) One person performs an act with the intent to cause:
>     (a) harmful or offensive contact with another person, or
>     (b) the fear that harmful or offensive contact is about to occur, and
> (2) The act of the first person has caused the other person to have a reasonable fear that the contact is about to occur.

1-3100 Indiana Model Civil Jury Instructions 3137. The Supreme Court of Indiana has explained that "[a]ny act of such a nature as to excite an apprehension of a battery may constitute an assault," so long as the apprehension is "one which would normally be aroused in the mind of a reasonable person." *Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991) (citing W. Prosser & J. Keaton, *Prosser and Keaton on Torts* § 10 (5th ed. 1984)).

Here, Still contends that Hetrick threatened violent action that put her in fear when he threatened to break her window with his baton. Still's deposition testimony establishes that Hetrick swung his baton "like a baseball bat" at her car when he was close enough to her car to scare her, but not close enough that he hit her window. (DE 48-2 at 12-13). He struck the baton

on the ground outside her driver's side door, and Still was fearful that Hetrick might beat her with the baton. (DE 48-2 at 13). After Still had rolled her window down, Hetrick threatened to break her rear passenger window, and he stated that he would "tell them the window was broken before [he] stopped [Still]," so that he would not have to pay for the damage. (DE 48-2 at 12). Hetrick then stated that if he broke her window, Still would "have glass in [her] hair and it will be put in there so they will know what just happened," so he put his baton down. (DE 48-2 at 12).

While Defendants argue that there is no evidence that Hetrick acted with intent to cause harmful contact with Still or the imminent apprehension of such contact, the Court disagrees. Contrary to Defendants' arguments, Hetrick's actions in swinging the baton at Still's window and threatening to break it while it was rolled up were not reasonable actions to take to get Still to roll her window down. Then, when Hetrick threatened to break Still's rear window after she had rolled down her driver's door window, Hetrick has even less of an insufficient justification for his threatening actions. His acknowledgment that breaking the window would shatter glass onto Still further shows that he was aware of the threatening nature of his actions, which would cause a reasonable person to have an apprehension of immediate contact. Thus, Defendants are not entitled to summary judgment on Still's state law claim for assault.

### d. Claims for Negligent Care of a Detained Individual and Failure to Provide Needed Medical Care

Still alleges a claim against Defendants under Indiana state law for the negligent care of a detained individual in the care and custody of a police officer, and she further alleges an Indiana state law claim against Defendants for the failure to provide needed medical care in a timely

fashion. (DE 1 ¶ 45). Because Hetrick is entitled to immunity under ITCA on these claims, as discussed above, the Court will only address these claims as they relate to the Indiana State Police.

In the portion of Defendants' motion for summary judgment that pertains to these claims, they refer to their arguments made regarding Still's federal claims for deprivation of medical needs and inhumane conditions of confinement. Defendants contend that these state law claims for the negligent care of a detained individual in the care and custody of a police officer and the failure to provide needed medical care in a timely fashion also must fail, as these claims relate to prisoners only. Defendants argue that Still was not a prisoner at any time while she was detained briefly during the traffic stop, and Defendants further argue that Hetrick provided timely medical care to Still by calling for an ambulance once he ascertained her medical condition.

Still, in her response, summarily concludes that she was "clearly arrested and detained by Trooper Hetrick" and then focuses her argument on whether Hetrick met his duty to call an ambulance for Still by calling soon enough. (DE 48 at 22). Still does not provide any citation to authority or any legal argument in support of her contention that she was "clearly arrested and detained." Because Still has failed to provide authority contradicting Defendants' assertion that "case law regarding the medical care of a detained individual or an individual in custody relates to prisoners only," and further fails to provide any authority supporting her contention that she was a detainee or prisoner, summary judgment will be granted as to Still's claims against the Indiana State Police under Indiana state law for the negligent care of a detained individual in the care and custody of a police officer and for the failure to provide needed medical care in a timely fashion. *See Mathis*, 133 F.3d at 548 ("A litigant who fails to press a point by supporting it with

pertinent authority, or by showing why it is sound despite a lack of supporting authority . . .

forfeits the point.").

><em>f. Whether the Undisputed Facts Support Still's Claims for Negligent and<br>Intentional Infliction of Emotional Distress</em>

Still alleges claims of intentional and negligent infliction of emotional distress against Defendants under Indiana state law. (DE 1 ¶ 45). Because Hetrick is entitled to immunity under ITCA on these claims, as discussed above, the Court will only address these emotional distress claims as they relate to the Indiana State Police.

In this portion of Defendant's motion for summary judgment, they argue that ITCA "prohibits tort suits against government employees *and government entities* for the conduct that occurs within the scope of employment." (DE 43 at 23 (citing Ind. Code § 34-13-3-3(8)) (emphasis added)). This is the first time that Defendants raise the issue of the Indiana State Police's immunity under ITCA as a governmental entity. Previously, Defendants argued only that Hetrick was entitled to immunity under ITCA. The Indiana State Police is also covered by the immunity protections of ITCA as it is a governmental entity. *See* Ind. Code § 34-13-3-3; *see also Flynn v. Ind. Bureau of Motor Vehicles*, 716 N.E.2d 988 (Ind. Ct. App. 1999) (explaining that governmental entities, not just employees, are immune from liability under ITCA's provisions). As noted earlier, "'add on' claims such as negligence and intentional infliction of emotional distress" are covered by ITCA. *Reiner*, 33 F. Supp. 3d at 1032 (citations omitted); *see also Ashcraft v. City of Crown Point*, No. 2:13-CV-080 JD, 2013 WL 5934612, at *6 (N.D. Ind. Nov. 5, 2013) (recognizing that "courts applying Indiana law have specifically dismissed" claims for intentional infliction of emotional distress under ITCA). Thus, the Indiana State Police is

also immune from Still's claims of negligent and intentional infliction of emotional distress, and Defendants will therefore be granted summary judgment on these claims.

### *D. Conclusion*

For the foregoing reasons, Defendants' motion for summary judgment (DE 42) will be

(1)  GRANTED IN PART with respect to the following claims:

   (A)  Still's federal claims against Hetrick for theft and trespass;

   (B)  Still's federal claims against Hetrick for deprivation of medical needs and for inhumane conditions of confinement;

   (C)  Still's state law claims against Defendants for theft and trespass;

   (D)  Still's state law claims against Hetrick for the negligent care of a detained individual, the failure to provide needed medical care, and the intentional and negligent infliction of emotional distress;

   (E)  Still's state law claims against Defendants for false imprisonment and false arrest;

   (F)  Still's state law claims against the Indiana State Police for the negligent care of a detained individual in the care and custody of a police officer and for the failure to provide needed medical care in a timely fashion;

   (G)  Still's state law claims against the Indiana State Police for the intentional and negligent infliction of emotional distress; and

(2)  DENIED IN PART with respect to the following claims, which shall survive:

   (A)  Still's federal claims against Hetrick for unreasonable detention, false imprisonment, false arrest, and unreasonable seizure;

   (B)  Still's state law claim against Defendants for assault.

SO ORDERED.

Entered this 31st day of March 2016.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge